STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. IRVING EUGENE WASHINGTON, JR., DEFENDANT-APPELLANT.

Argued February 5 and 6, 1968—Decided May 20, 1968.

(1)

Mr. *Michael F. Riccardelli* argued the cause for plaintiff-respondent (Mr. *Brendan T. Byrne,* County Prosecutor of Essex County, attorney).

Mr. *Calvin J. Hurd* argued the cause for defendant-appellant.

The opinion of the court was delivered by

HANEMAN, J. Defendant appeals from a verdict of murder in the first degree with a recommendation of life imprisonment.

The facts concerning the killing itself are undisputed. Defendant appeals on the single ground that his identification as the perpetrator of the murder upon which his conviction must have been bottomed was against the weight of the evidence.

The undisputed testimony concerning the homicide is as follows: On October 6, 1965 a report was made to the Newark police, that a black 1960 Cadillac, license number HLA 660 had been stolen during the early morning hours. On that date Sergeant William Connelly, a member of the East Orange Police Department, was on car patrol duty by himself in a zone which encompassed north 17th and 18th Streets. Shortly before 11:38 A. M. Sergeant Connelly directed the driver of a black Cadillac with the above license and travelling on North 18th Street, East Orange, to pull to the curb. He pulled his car abreast of the Cadillac. At or about 11:38 A. M. he transmitted a call to the East Orange Police Station from his patrol car advising that he was on North 17th Street (he was actually on North 18th Street) between William Street and Park Avenue engaged in the

recovery of a stolen car and the investigation of the occupant. As a result of this call officers Landon and Nash were dispatched to help Connelly. These officers arrived in time to see Connelly and the driver of the stolen car, engaged in a struggle. The operator of the Cadillac fired his own revolver three times at close quarters, hitting Connelly each time. Connelly staggered, fell backward against the police car, then forward to the ground. The assailant ran in an easterly direction between two houses toward North 17th Street pursued by both Nash and Landon. Nash continued to search for about ten minutes but was unable to locate Connelly's assailant. Landon returned to attempt to treat Connelly and at 11:43 A. M. called for an ambulance which arrived shortly thereafter. Connelly stated on his way to the hospital that he did not recognize his assailant. He died on the operating table of the East Orange General Hospital.

The basic issue of the trial was the question of the identity of Connelly's killer. It is on this question, as noted, that defendant bottoms his appeal, arguing that the testimony of the eye witnesses to the crime who identified him at the trial, and that of the fingerprint expert who identified a latent print on the Cadillac as being his, was unbelievable.

In *State v. Tranlino,* 44 *N. J.* 358, *p.* 370 (1965) *cert. den.* 382 *U. S.* 993, 86 *S. Ct.* 573, 15 *Ed.* 2d 479 *reh. den.* 383 *U. S.* 922, 86 *S. Ct.* 901, 15 *L. Ed.* 2d 679 (1966), this Court said:

"We cannot interfere with a jury's verdict unless 'it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion.' *R. R.* 1:5–1(a) ; *State v. Hudson, supra,* 38 *N. J.,* at *p.* 379. * * *"

See also *State v. Haines,* 20 *N. J.* 438 (1956).

 There were several eyewitnesses to the crime who positively identified the defendant at the trial. Defendant directed his attack upon this testimony by pointing to alleged discrepancies between the witness' pre-trial description of the assailant and defendant's actual appearance. Although

there were some differences, they were only of such a nature as to raise a jury question of the accuracy of the trial recognition of defendant. Additionally, defendant stresses that one witness who faced the assailant at a distance of some 20 or 30 feet after the shooting of Connelly and at whom defendant leveled a revolver, had previously identified a third person in a New York lineup as the perpetrator of the murder. This witness though subpoenaed by the State was not called by the State but was called by defendant. The witness explained her mistake in New York by alluding to her physical condition at the time of the New York confrontation. She stated that the trip to New York succeeded a coronary episode as a result of which she had been restricted to her bed in New Jersey until a few days before she was required to travel with the police to New York. As a result of her physical condition and the rapid pace of events she was confused. Here also we cannot say that the positive recognition of defendant from the witness stand was rendered unbelievable by her prior New York experience, and that a verdict based upon such testimony forces the conclusion that it was the result of mistake, partiality, prejudice or passion.

We find no merit in defendant's argument that the testimony of one witness to whom defendant allegedly admitted the murder was either unbelievable or involuntary.

Defendant rests his fingerprint attack upon the conflict between the State's and his expert as to how many "identical characteristics" must exist between an unknown and an acknowledged print for identification of the unknown print. Also, he argues that there were less identical characteristics than the State's expert testified he found. The problem was one of credibility. We view the evidence on these subjects as being sufficient to sustain the jury resolution of both questions. Again, we cannot say that the verdict clearly and convincingly appears the result of mistake, partiality, prejudice or passion.

Before concluding we feel obliged to advert to one other matter, understandably not urged by defendant as a

ground of appeal. Defendant's Demand for a Bill of Particulars included the following two questions:

"23. Set forth the names and addresses of all persons on whom the State relies to establish the presence of the defendant at the scene of the alleged offense.
24. Set forth the names and addresses of all eyewitnesses to the occurrence which is the subject of the indictment, and the names of any other persons having relevant knowledge thereof."

In answer, the State did not list its fingerprint expert. Upon defendant's objection to the testimony of the expert at the trial, the court, although taking the position that the bill of particulars did not require the disclosure of the name, adjourned the trial and gave defense counsel an opportunity to prepare for cross-examination; get an expert of his own; and have access to the reports of the State's expert. The record is bare of any suggestion that the failure to disclose the name of the expert and to reveal the report of the State's expert were prejudicial to defendant, or that, with the adjournment, defendant's counsel did not have sufficient time to prepare for cross-examination. To the contrary, at argument defense counsel fairly and frankly admitted that the time accorded him was adequate for his preparation although suggesting that *perhaps* he might have been better prepared had he known of these two facts earlier without being able to point to any particular to which this would apply. In the light of the foregoing we feel that defendant was not prejudiced by the State's failure to disclose its expert's existence. However, we conceive that where, as here, opposing expert opinion and sample testing may be required, the State must furnish the name of the expert in answer to the above or a similar question.

Affirmed.

*For affirmance* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and HANEMAN—6.

*For reversal*—None.